Anthony Todaro, OSB No. 150714
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Tel:    206.839.4800
Fax:    206.839.4801
E-mail: anthony.todaro@us.dlapiper.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| THE OREGON CLINIC, PC, an Oregon professional corporation,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, a California corporation.<br><br>　　　　　　　　　　　Defendant. | Case No. 3:21-cv-00778<br><br>**DEFENDANT'S MOTION TO DISMISS** |

## <u>TABLE OF CONTENTS</u>

RULE 7-1 CERTIFICATION...................................................................................... 1

I.      MOTION TO DISMISS ................................................................................... 1

II.     INTRODUCTION ............................................................................................ 1

III.    STATEMENT OF FACTS ............................................................................... 3

        A.      Oregon Clinic asserts three duplicative causes of action – each is
                dependent on a prerequisite Oregon Clinic cannot meet: direct physical
                loss or damage to covered property. .................................................... 3

        B.      Oregon Clinic's Complaint references stay-at-home orders that allowed
                Oregon Clinic to remain open. ............................................................. 4

        C.      This Motion to Dismiss is grounded in the Policy's undisputed provisions.......... 5

        D.      What Oregon Clinic does not allege. .................................................... 8

IV.     Legal Standards.............................................................................................. 9

        A.      Motion to dismiss standard. ................................................................ 9

        B.      Insurance contact interpretation is a matter of law. ............................ 10

V.      Oregon Clinic HAS NOT ALLEGED FACTS DEMONSTRATING DIRECT
        PHYSICAL LOSS OR DAMAGE to property. ............................................... 11

        A.      Oregon Clinic has failed to show that any property sustained actual
                physical damage or was physically lost, as required under Oregon law. ............. 11

        B.      Courts have consistently found the pandemic does not cause physical loss
                or damage....................................................................................... 12

        C.      Interpretation of "direct physical loss or damage" to encompass non-
                physical losses would render policy language meaningless. ............... 20

        D.      Loss of use of property does not constitute "direct physical loss or
                damage." ......................................................................................... 22

        E.      Civil Authority Coverage is also inapplicable..................................... 24

VI.     Oregon Clinic Fails to Allege Facts Sufficient to Support Coverage Under the
        Loss Adjustment Expense extension. ............................................................ 27

VII.    Coverage is Excluded by the Virus Exclusion............................................... 27

VIII.    The Court should dismiss without leave to amend. ........................................... 28

IX.    Conclusion ...................................................................................................... 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*
2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) ........................................................25

*10E, LLC v. Travelers Indem. Co. of Connecticut,*
483 F. Supp. 3d 828 (C.D. Cal. 2020), *10E* .................................................23, 26

*1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.,*
2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020)....................................................22

*13 Coins Management LLC v. National Surety Corp.,*
No. 2:21-cv-00178-BJR (W.D. Wash.) ..................................................................15

*4431, Inc.* v. *Cincinnati Ins. Cos.,*
2020 WL 7075318 (E.D. Pa. Dec. 3, 2020)............................................................26

*6593 Weighlock Dr., LLC v. Springhill SMC Corp.,*
2021 WL 1419049 (N.Y. Sup. Ct. Onondaga Cnty. Apr. 13, 2021) ......................20

*7th Inning Stretch LLC v. Arch Ins. Co.*
2021 WL 1153147 (D.N.J. Mar. 26, 2021)..............................................................19

*Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.,*
2021 WL 1131640, at *4 (D. Mass. Mar. 24, 2021) ..............................................20

*Another Planet Ent., LLC v. Vigilant Ins. Co.,*
2021 WL 774141 (N.D. Cal. Feb. 25, 2021) ..........................................................18

*Ascent Hosp. Mgmt. Co., LLC v. Employers Ins. Co. of Wausau,*
2021 WL 1791490 (N.D. Ala. May 5, 2021) ..........................................................21

*Ashcroft v. Iqbal,*
556 U.S. at 678 (2009).............................................................................................10

*B St. Grill & Bar LLC v. Cincinnati Ins. Co.,*
2021 WL 857361 (D. Ariz. Mar. 5, 2021) ..............................................................20

*BA LAX, LLC et al. v. Hartford Fire Ins. Co.,*
2021 WL 144248 (C.D. Cal. Jan. 12, 2021) ...........................................................18

*Bachman's Inc. v. Florists' Mut. Ins. Co.,*
2021 WL 981246 (D. Minn. Mar. 16, 2021) ..........................................................20

*Baker v. Oregon Mutual Ins. Co.*
   2021 WL 1145882 (N.D. Cal. Mar 25, 2011) .................................................................16

*Barbizon School of San Francisco, Inc. v. Sentinel Ins. Co. Ltd.*,
   2021 WL 1222161 (N.D. Cal. Mar. 31, 2021) ..............................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................9

*Boxed Foods Co., LLC v. California Capital Ins. Co.*,
   2020 WL 6271021 (N.D. Cal. Oct. 26, 2020) ..............................................................28

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*,
   2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) .................................................................28

*Caffe Vita Coffee Roasting Co. v. Fireman's Fund Ins. Co.*,
   No. 2:20-cv-01079-BJR (W.D. Wash.) .................................................................13, 15

*Canlis Restaurants, Inc. v. Fireman's Fund Ins. Co.*,
   No. 2:21-cv-00373-BJR (W.D. Wash.) ........................................................................15

*Caribe Restaurant & Nightclub, Inc. v. Topa Ins. Co.*,
   2021 WL 1338439 (C.D. Cal. Apr. 9, 2021) ...............................................................18

*Carrico v. City and Cnty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) .....................................................................................29

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*,
   1999 WL 619100 (D. Or Aug 4, 1999) ................................................................. *passim*

*Daneli Shoe Co. v. Valley Forge Ins. Co.*,
   2021 WL 1112710 (S.D. Cal. Mar. 17, 2021) .........................................................17, 22

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
   636 F.3d 683 (5th Cir. 2011) .......................................................................................24

*Ellis v. GMAC Mortg., Inc.*,
   2011 WL 1086530 (D. Or. Mar. 16, 2011) ....................................................................9

*Employers Ins. of Wausau v. Tektronix, Inc.*,
   211 Or. App. 485 ..........................................................................................................11

*ES Restaurant Group, Inc. v. Fireman's Fund Ins. Co.*,
   No. 2:20-cv-01193-BJR (W.D. Wash.) .................................................................13, 15

*Flores v. Barr*,
   934 F.3d 910 (9th Cir. 2019) .......................................................................................21

*Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*,
  2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) ..............................................22

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
  488 F. Supp. 3d 904 (N.D. Cal. 2020) ..................................................28

*George Gordon Enterprises, Inc. dba Playland Arcade v. AGCS Marine*
  *Insurance Company, et al.* ....................................................................17

*In re Gilead Sci. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...............................................................10

*Graspa Consulting, Inc. v. United Nat'l Ins. Co.*,
  2020 WL 7062449 (S.D. Fla. Nov. 17, 2020)........................................18

*Graspa Consulting, Inc. v. United Nat'l Ins. Co.*,
  2021 WL 199980 (S.D. Fla. Jan. 20, 2021) ...........................................11

*Great Am. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*,
  416 F. Supp. 3d 1098 (D. Or. 2019) ......................................................10

*Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*
  793 F. Supp. 259, 263 (D. Or. 1990), aff'd, 953 F.2d 1387 (9th Cir. 1992) ...........9, 12, 14, 24

*Gym Mgmt. Services, Inc. v. Vantapro Specialty Ins. Co.*,
  2021 WL 647528 (C.D. Cal. Feb. 1, 2021)............................................18

*Hajer v. Ohio Sec. Ins. Co.*,
  2020 WL 7211636 (E.D. Tex. Dec. 7, 2020)..........................................25

*Hoffman Constr. Co. v. Fred. S. James & Co.*,
  836 P.2d 703 (Or. 1992) ........................................................................10

*Islands Restaurants, LP v. Affiliated FM Ins. Co.*,
  2021 WL 1238872 (S.D. Cal. Apr. 2, 2021)...........................................17

*James Colgan v. Sentinel Ins. Co., Ltd.*,
  2021 WL 472964 (N.D. Cal. Jan. 26, 2021) ..........................................18

*Jonathan Oheb, MD, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  2020 WL 7769880 (C.D. Cal. Dec. 30, 2020) ..................................18, 29

*Juiceme, LLC v. Booster Juice Ltd. P'ship*,
  730 F. Supp. 2d 1276 (D. Or. 2010) ........................................................9

*Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*,
  2020 WL 7696080 (N.D. Cal. Dec. 28, 2020) .......................................18

*Karmel Davis & Assocs., Att'ys-at-L., LLC v. Hartford Fin. Servs. Grp., Inc.*,
2021 WL 420372 (N.D. Ga. Jan. 26, 2021) ...................................................................20

*Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co.*,
2021 WL 141180 (N.D. Cal. Jan. 13, 2021) ............................................................18, 29

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ...................................................................................5

*M&E Bakery Holdings, LLC v. Westfield Nat'l Ins. Co.*,
2021 WL 1837393 (N.D. Ill. May 7, 2021) ..................................................................29

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ...................................................................................28

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co.*,
2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ................................................................17

*Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*,
2021 WL 1226447 (S.D. Cal. Mar. 30, 2021) ..............................................................18

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) .........................................................22, 26

*Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*,
2020 WL 7495180 (N.D. Cal. Jan. 21, 2020) ..........................................................18, 24

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .....................................................................................9

*Motiv Grp., Inc. v. Cont'l Cas. Co.*,
2021 WL 1240779 (C.D. Cal. Apr. 1, 2021) ................................................................17

*Mudpie, Inc.* v. *Travelers Cas. Ins. Co. of Am.*,
2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) .............................................................25

*N. Pac. Ins. Co. v. Hamilton*,
22 P.3d 739 (Or. 2001) ...........................................................................................10

*Naccarato Restaurant Group, Inc. v. Fireman's Fund Ins. Co.*,
No. 2:20-cv-06108-BJR (W.D. Wash.) ......................................................................15

*Neighborhood Grills Management LLC, et al. v. National Surety Corp.*,
No. 2:21-cv-00374-BJR (W.D. Wash.) ......................................................................15

*Nguyen, et al. v. Travelers Cas. Ins. Co., et al.*,
2021 WL 2184878 (W.D. Wash. May 28, 2021)........................................................ *passim*

*O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*,
   2021 WL 105772 (N.D. Cal. Jan. 12, 2021) ...................................................18

*Out West Restaurant Group Inc. v. Affiliated FM Ins. Co.*
   2021 EL 1056627 ...............................................................................15, 16, 29

*Pacific Endodontics PS v. Ohio Casualty Ins. Co.*,
   No. 2:20-cv-00620-BJR (W.D. Wash.) .........................................................13

*Palmdale Estates, Inc. v. Blackboard Ins. Co.*,
   2021 WL 25048 (N.D. Cal. Jan. 4, 2021) .....................................................18

*Patton v. Cox*,
   276 F.3d 493 (9th Cir. 2002) ........................................................................10

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
   2020 WL 7078735 (D. Kan. Dec. 3, 2020)....................................................20

*Protégé Rest. Partners LLC v. Sentinel Ins. Co. Ltd.*,
   2021 WL 428653 (N.D. Cal. Feb. 8, 2021) ...................................................18

*Pulido v. United Parcel Serv. Gen. Servs. Co.*,
   31 F. Supp. 2d 809 (D. Or. 1998) .................................................................10

*R.T.G. Furniture Corp. v. Hallmark Specialty Ins. Co.*,
   2021 WL 686864 (M.D. Fla. Jan. 22, 2021)..................................................20

*Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*,
   2020 WL 6392841 (S.D. Fla. Nov. 2, 2020)..................................................28

*Restaurant Management Group v. Zurich American Ins. Co.*,
   2021 WL 1937314 (N.D. Ga. Mar. 16, 2021)................................................23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc*.,
   442 F.3d 741, 746 n. 6 (9th Cir. 2006) ...........................................................4

*Rialto Pockets, Inc. v. Certain Underwriters at Lloyd's*,
   2021 WL 267850 (C.D. Cal. Jan. 7, 2021) ...................................................18

*S. Florida Ent. Associates, Inc. v. Hartford Fire Ins. Co.*,
   2020 WL 6864560 (S.D. Fla. Nov. 13, 2020).................................................11

*Sandy Point Dental, PC v. Cincinnati Ins. Co*.,
   2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) ......................................18, 25, 26

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
   2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) ..............................................22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ........................................................29

*Selane Products, Inc v. Cont'l Cas. Co.*,
   2021 WL 609257 (C.D. Cal. Feb. 8, 2021)........................................18

*Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*,
   2021 WL 1889866 (E.D. Mo. May 11, 2021) ....................................29

*Sky Flowers, Inc. v. Hiscox Ins. Co.*,
   2021 WL 1164473 (C.D. Cal. Mar. 26, 2021) ....................................18

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
   2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020)....................................23

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*
   2020 WL 7351246 (W.D. Tex. Dec. 14, 2020) ........................19, 25, 26

*Toppers Salon & Health Spa, Inc. v. Travelers Property Casualty Co. of America*
   2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) ................................21, 28

*Town Kitchen LLC v. Certain Underwriters at Lloyd's*,
   2021 WL 768273 (S.D. Fla. Feb. 26, 2021) ..........................20, 22, 23

*Tralom Inc. v. Beazley USA Servs., Inc.*,
   2020 WL 8620224 (C.D. Cal. Dec. 29, 2020) ....................................24

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*,
   2021 WL 131556 (E.D. Pa. Jan. 14, 2021) ........................................22

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
   2020 WL 6436948 (S.D. W. Va. Nov. 2, 2020) ..................................2, 4

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
   2021 WL 242979 (S.D. Cal. Jan. 22, 2021)........................................20

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Co.*,
   498 F. Supp. 3d 1233 (C.D. Cal. 2020) ............................................22

*Weimac, LLC. v. Fireman's Fund Ins. Co.*,
   No. 2:20-cv-01515-BJR (W.D. Wash.) ........................................13, 15

*Wellness Eatery La Jolla LLC v. The Hanover Ins. Grp.*,
   2021 WL 389215 (S.D. Cal. Feb. 2, 2021)........................................16

*Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.*,
   2021 WL 1060230 (C.D. Cal. Mar. 19, 2021) ....................................18

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934 (9th Cir. 2008) ..............................................................................9

*Worthy Hotels, Inc. v. Fireman's Fund Ins. Co.*,
    No. 2:21-cv-00025-BJR (W.D. Wash.) .........................................................13, 15

**Statutes**

ORS 15.360(1) ..................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 9

Fed. R. Civ. P. 15(a) ...........................................................................................28

LR 7-1(a)............................................................................................................1

LR 7-1(b) ...........................................................................................................1

## <u>RULE 7-1 CERTIFICATION</u>

In compliance with LR 7-1(a), the parties have conferred in good faith in an attempt to resolve the issues presented in this motion, but the parties were unable to reach an agreement.

## I.    MOTION TO DISMISS

In compliance with LR 7-1(b) and pursuant to Fed. R. Civ. P. 12(b)(6), defendant Fireman's Fund Insurance Company ("Fireman's") moves to dismiss plaintiff The Oregon Clinic's Complaint ("Complaint") (Dkt. No. 1) in its entirety and with prejudice because it fails to state a claim on which relief may be granted.

## II.    INTRODUCTION

Fireman's respectfully requests the Court dismiss The Oregon Clinic's ("Oregon Clinic") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Oregon Clinic is a health care provider with locations throughout Oregon. Like thousands of businesses across the country, Oregon Clinic purchased a property insurance policy that covers "direct physical loss or damage" to property, rather than to individuals. *See* Declaration of Anthony Todaro in Support of Motion to Dismiss ("Todaro Decl."), Ex. A ("Policy"), Form 250000 01 13, p. 6 of 63 ("[W]e will pay for direct physical loss of or damage to Covered Property….). Oregon Clinic, however, seeks to recover economic losses incurred during the COVID-19 pandemic via the Policy, despite the absence of any "direct physical loss or damage" to covered property. Courts across the country have dismissed more than 300 cases making near-identical allegations.

The overarching issue in this Motion is whether Oregon Clinic sufficiently pleaded facts demonstrating that it suffered "direct physical loss or damage" to covered property from COVID-19. It did not. Instead, Oregon Clinic merely stated that a pandemic exists, that the government understandably issued prophylactic stay-at-home orders to prevent people from transmitting the virus to on another, and that such government orders caused Oregon Clinic to lose potential

business. This is not enough. It is well-established that, while "COVID-19 poses a serious risk to people gathered in proximity to one another and the governmental orders closing certain businesses were designed to ameliorate that risk," covered property "is not physically damaged or rendered unusable or uninhabitable" by the virus—"the pandemic impacts human health and human behavior, not physical structures." *Uncork & Create LLC v. Cincinnati Ins. Co*., 2020 WL 6436948, at *5 (S.D. W. Va. Nov. 2, 2020). Courts have repeatedly dismissed similar lawsuits because, while the pandemic has had a tragic effect on all, it simply does not physically alter property.

In accordance with the great weight of case law across the country, Oregon Clinic's case should be dismissed. The Complaint's conclusory and speculative allegations that the coronavirus was present on or around Oregon Clinic's premises, that the coronavirus can survive on surfaces for short periods, and that civil orders seeking to stop the spread of the virus among individuals caused Oregon Clinic economic harm are not sufficient to establish physical loss or damage to property. As the honorable Judge Rothstein of the Western District of Washington held just two weeks ago when dismissing dozens of complaints in Washington, an "overwhelming consensus" has formed finding that "COVID-19 does not cause the physical loss or damage to property required as a condition precedent to trigger coverage." *Nguyen, et al. v. Travelers Cas. Ins. Co., et al.*, 2021 WL 2184878, at *1 (W.D. Wash. May 28, 2021).[1] The same result is warranted here. Fireman's respectfully requests that this Court grant this Motion to Dismiss, consistent with the large and growing larger majority of courts that have addressed this precise coverage issue.

---

[1] Judge Rothstein's order dismissed several Fireman's cases wherein plaintiffs made near identical claims as Oregon Clinic under the same policy as at issue here.

### III.    STATEMENT OF FACTS

**A.    Oregon Clinic asserts three duplicative causes of action – each is dependent on a prerequisite Oregon Clinic cannot meet: direct physical loss or damage to covered property.**

Oregon Clinic's Complaint includes three duplicative claims, each based on the predicate assumption that Fireman's improperly denied coverage.

- Breach of Contract (for "denying coverage under the Policy for the losses claimed by The Oregon Clinic");

- Breach of the Covenant of Good Faith and Fair Dealing (for "Fireman's Fund's refusal to pay Policy benefits");

- Declaratory Judgment ("declaring that Fireman's Fund has breached the Policy and that The Oregon Clinic's losses described above are covered").

Compl. at ¶¶ 114–31.

Because Oregon Clinic's causes of action are each dependent on the false premise that property coverage was triggered by stay-at-home orders and a virus that injures humans (but not property), each of Oregon Clinic's causes of action necessarily fails. The Policy requires "direct physical loss or damage" to property. Policy, p. 6 of 63. Yet the Complaint presents only conclusory assertions and amorphous recitals that do nothing more than parrot the Policy's terms, as if repeating the Policy's prerequisites might turn recitals into facts. It is well-established by now that the virus does not cause physical loss or damage to property—it does not for instance break or destroy faucets, walls, floors, ceilings, or windows. Nor does Oregon Clinic allege that any personal property or improvements were broken, torn, destroyed, or lost due to COVID-19. The structure of such inanimate items remains unchanged before, during, and after the temporary period in which the stay-at-home orders were in effect. In the end, "the pandemic impacts human

health and human behavior, not physical structures." *Uncork & Create*, 2020 WL 6436948, at \*5.[2]

As the song goes, "A chair is still a chair with no one sitting there."[3] Oregon Clinic has not and

cannot allege facts demonstrating physical loss or damage to its property, or any property for that

matter.

**B.  Oregon Clinic's Complaint references stay-at-home orders that allowed Oregon Clinic to remain open.**

Oregon Clinic alleges that its covered property was closed as a result of Governor Brown's

civil authority orders ("Civil Orders"). Compl. at ¶¶ 71–77. To the contrary, each of the Civil

Orders permitted continued operation of Oregon Clinic's premises.[4] Governor Brown's Executive

Order 20-08, referenced at paragraph 73 of the Complaint, closed public schools, not health clinics.

Todaro Decl. Ex. B. Similarly, Executive Order 20-10, referenced at paragraph 74 of the

Complaint, prohibits elective and non-urgent procedures, but did not in any way close Oregon

Clinic's property. *Id*. Ex. C. As the Order explicitly states, such limitations were put in place "to

conserve PPE and other health care resources," not due to any direct physical loss or damage to

property. *Id*. Governor Brown's Executive Order 20-12, which Oregon Clinic claimed at paragraph

75 of the Complaint required certain citizens to stay home and mandated social distancing,

specifically exempted medical facilities from social distancing requirements and unequivocally

did not close Oregon Clinic's property. *Id*. Ex. D. Finally, Governor Brown's Executive Order 20-

22, referenced at paragraph 76 of the Complaint, rescinded prior Executive Orders and explicitly

permitted operations at medical facilities. *Id*. Ex. E. There can be no question—the Civil Orders

---

[2] Because COVID-19 does not cause physical alteration to any property, Oregon Clinic similarly has not alleged, and cannot allege, that covered property was "at risk" of "direct physical loss or damage" due to the virus.

[3] Luther Vandross, *A House is Not a Home*, on Never Too Much (Epic Records 1981).

[4] Fireman's asks the Court to take judicial notice of the Civil Orders, which are attached to the Todaro Decl. for the Court's convenience. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (the court may take judicial notice of matters of public record on a motion to dismiss).

did not mention Oregon Clinic's locations at all and specifically permitted the continued operation

of such properties.

**C.      This Motion to Dismiss is grounded in the Policy's undisputed provisions.**

In deciding a motion to dismiss, the Court may consider the full text of documents

referenced in, or central to, the allegations in the complaint. Under the "incorporation by reference"

doctrine, the Court may consider "documents whose contents are alleged in a complaint and whose

authenticity no party questions." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Turning to the controlling text of the Policy (Todaro Decl. Ex. A), all but a single provision[5]

referenced in the Complaint depends on Oregon Clinic pleading facts that, if true, would establish

direct physical loss or damage to property. We start with the general Property Coverage:

> I. Property Coverage
>     A. If a Limit of Insurance for Business Real Property or Business
>     Personal Property is shown in the Declarations, then we will pay
>     for *direct physical loss or damage* to **Property Insured** while at
>     a **location**, including such property in the open (or in a vehicle in
>     the open) within 1,000 feet of such **location**, caused by or
>     resulting from a **covered cause of loss** during the Policy Period.

*See* Policy, p. 6 of 63 (**emphasis** in original; *emphasis* added). Similarly, the Business Income

Coverage provision states:

> II. Business Income and Extra Expense Coverage
>     A If a Limit of Insurance for Business Income and Extra Expense
>     is shown in the Declarations, then we will pay for the actual loss
>     of **business income** and necessary **extra expense** you sustain due
>     to the necessary **suspension** of your **operations** during the **period
>     of restoration** arising from *direct physical loss or damage* to
>     property at a **location**, or within 1,000 feet of such **location**,
>     caused by or resulting from a **covered cause of loss.**

---

[5] The Loss Adjustment Expense extension is separately addressed in Section (VI) of this Motion.

*See id.*, p. 6 of 63 (**emphasis** in original; *emphasis* added). The Policy's Extended Business

Income and Extra Expense provision states:

> 6. Extended Business Income and Extra Expense Coverage
>> a. If a **business income** and **extra expense** loss is covered under this Coverage Form, then subject to the Limit of Insurance for Business Income and Extra Expense Coverage:
>>> (1) We will pay for the actual loss of **business income** you sustain during the period that begins on the date property (except **finished stock**) is actually repaired, rebuilt, or replaced, and **operations** are resumed and ends on the earlier of:
>>>> (a) The date you could restore your **operations** with reasonable speed, to the level which would generate the **business income** amount that would have existed if no *direct physical loss or damage* occurred; or
>>>> (b) The number of consecutive calendar days, stated in the Declarations, after the date **operations** are resumed.

*See id.*, p. 19 of 63 (**emphasis** in original; *emphasis* added). The Civil Coverage provision

states:

> 2. Civil Authority Coverage
>> a. We will pay for the actual loss of **business** income and necessary **extra expense** you sustain due to the necessary **suspension** of your **operations** caused by action of civil authority that prohibits access to a **location.** Such prohibition of access to such **location** by a civil authority must:
>>> (1) Arise from *direct physical loss or damage* to property other than at such **location;** and
>>> (2) Be caused by or result from a **covered cause of loss;** and
>>> (3) Occur within the number of miles stated in the Declarations from such **location.**

*See id.*, p. 18 of 63 (**emphasis** in original; *emphasis* added). Oregon Clinic also alleges it is

entitled to coverage under the Dependent Property Coverage, which states:

> 4. Dependent Property Coverage
>> a. Dependent Property Coverage
>>> (1) We will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary

> **suspension** of **operations** during the **period of restoration** at a **location.**
> (2) The **suspension** must be due to _direct physical loss or damage_ at the **location** of a **dependent property,** situated inside or outside of the Coverage Territory, caused by or resulting from a **covered cause of loss.**

*See id.*, p. 18 of 63 (**emphasis** in original; _emphasis_ added). The Policy's Business Access

Coverage provision states:

> a. We will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension** of **operations** at a **location** if access to such **location** is impaired or obstructed. Such impairment or obstruction must:
>> (1) Arise from _direct physical loss or damage_ to property other than at such **location** ….

*See id.*, p. 18 of 63 (**emphasis** in original; _emphasis_ added). The Policy's Expediting Expense

Coverage provision states:

> 5. Expediting Expense Coverage
>> a. (1) We will pay the necessary **expediting expense** you sustain due to _direct physical loss or damage_ to property at a **location** caused by or resulting from a **covered cause of loss**.
>>> (2) No Deductible applies to Expediting Expense Coverage.
>> b. We will not pay under Expediting Expense Coverage for:
>>> (1) Expenses recoverable elsewhere under this Coverage Form or the Commercial Property Coverage Section of this Policy, such as but not limited to Extra Expense Coverage; or
>>> (2) Your costs incurred for the temporary rental of property or temporary replacement of damaged property.
>> c. The most we will pay under this Extension of Coverage in any one occurrence or **loss event** is the Limit of Insurance shown in the Declarations applicable to Expediting Expense Coverage.

*See id.*, p. 19 of 63 (**emphasis** in original; _emphasis_ added). Oregon Clinic also alleges it is

entitled to coverage under the Policy's Ordinance or Law Coverage, which states:

> 5. Ordinance or Law Coverage
>> a. We will pay under Ordinance or Law Coverage A through E described below if:

> (1) **Property Insured** at a **location** sustains *direct physical loss or damage* caused by or resulting from a **covered cause of loss;** and
> (2) Such covered loss or damage results in the enforcement of a covered **ordinance or law.**

*Id.*, p. 24 of 63 (**emphasis** in original). Finally, Oregon Clinic alleges it is entitled to coverage under the Communicable Disease Coverage provision:

> 1. Communicable Disease Coverage
>> a. (1) We will pay for *direct physical loss or damage* to **Property Insured** caused by or resulting from a covered **communicable disease event** at a location including the following necessary costs incurred to:
>>> (a) Tear out and replace any part of **Property Insured** in order to gain access to the **communicable disease;**
>>> (b) Repair or rebuild **Property Insured** which has been damaged or destroyed by the **communicable disease;** and
>>> (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the **communicable disease.**
>> (2) If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension** of **operations** during the **period of restoration.** The **suspension** *must be due to direct physical loss or damage* to property at a location caused by or resulting from a covered **communicable disease event.**

*Id.*, pp. 21–22 of 63 (**emphasis** in original; *emphasis* added). A "communicable disease event" is an event in which a health authority has ordered a location be *evacuated, decontaminated, or disinfected* due to the outbreak of a communicable disease. *Id.*, p. 52 of 63 (*emphasis* added).

## D.     What Oregon Clinic does not allege.

Nowhere does Oregon Clinic allege any facts that, if true, would satisfy any of these Policy coverages. Oregon Clinic seeks Business Income, Dependent Property, and Communicable

Disease coverage, each of which is bound by a "period of restoration" in which physically damaged or lost property is replaced or repaired. But Oregon Clinic does not (and cannot) allege any period of restoration in which COVID-19 required repairs or replacements of physically altered or lost property. Oregon Clinic also seeks coverage under the Civil Authority provision but does not allege a civil authority prohibited access to any of Oregon Clinic's locations and that such prohibition arose from direct physical loss or damage to someone else's property. Crucially, Oregon Clinic makes no allegations that any covered property suffered a "distinct and demonstrable" physical alteration as required by *Columbiaknit, Inc. v. Affiliated FM Ins. Co.* and *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n* to establish <u>*direct physical loss or damage to*</u> property due to COVID-19. 1999 WL 619100, at \*3 (D. Or. Aug. 4, 1999); 793 F. Supp. 259, 263 (D. Or. 1990), aff'd, 953 F.2d 1387 (9th Cir. 1992).

### IV.    LEGAL STANDARDS

**A.    Motion to dismiss standard.**

Rule 12(b)(6) imposes an important gatekeeper role on the Court. To remain in federal court, and thereby consume all of the time and resources associated with litigation, a plaintiff must satisfy certain minimum thresholds, which Oregon Clinic has failed to meet here. Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when the plaintiff fails to allege sufficient facts to "state a claim to relief that is plausible on its face" as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-70 (2007); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). To survive a Rule 12(b)(6) motion, the factual allegations included in the complaint "'must be enough to raise a right to relief above the speculative level.'" *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555); *Juiceme, LLC v. Booster Juice Ltd. P'ship*, 730 F. Supp. 2d 1276, 1279-80 (D. Or. 2010). Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action are insufficient." *Ellis v. GMAC Mortg., Inc.*, 2011

WL 1086530, at *1 (D. Or. Mar. 16, 2011) (citing *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court may disregard any allegations in the Complaint that are contradicted by the actual terms of the Policy. *See, e.g.*, *In re Gilead Sci. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

**B.    Insurance contact interpretation is a matter of law.**

Under Oregon law, interpretation of an insurance policy is a question of law for the court to decide. *See Hoffman Constr. Co. v. Fred. S. James & Co.*, 836 P.2d 703, 705-06 (Or. 1992).[6] The plain meaning of the policy language in an insurance contract is to be given effect, and the intent of the parties is determined based on the terms and conditions of the policy. *Id.*; *N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 741 (Or. 2001). "The policy must be viewed by its four corners and considered as a whole. All parts and clauses of the policy must be construed to determine if and how far one clause is modified, limited or controlled by others." *Hamilton*, 22 P.3d at 741 (internal quotation marks and citation omitted).

---

[6] A federal court sitting in diversity applies the forum state's choice-of-law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Oregon law, the threshold question is whether the laws of Oregon and any proposed alternative forum jurisdiction conflict. *Great Am. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1102 (D. Or. 2019). Oregon law will apply absent a conflict. *Id.* If there is a conflict, and both states have substantial interests, Oregon courts apply the "most significant relationship" approach. *Pulido v. United Parcel Serv. Gen. Servs. Co.*, 31 F. Supp. 2d 809, 814 (D. Or. 1998); ORS 15.360(1). Neither party has proposed that the law of a jurisdiction other than Oregon's should govern this dispute. Fireman's submits that Oregon law governs this insurance dispute because the properties at issue are located in Oregon and the Policy was issued to Oregon Clinic, an Oregon citizen. Compl. ¶¶ 1, 3.

## V.    OREGON CLINIC HAS NOT ALLEGED FACTS DEMONSTRATING DIRECT PHYSICAL LOSS OR DAMAGE TO PROPERTY.

The insured bears the initial burden of proving that a loss is covered under the policy; only if the insured is successful in so doing does the burden shift to the insurer to demonstrate the applicability of an exclusion. *See Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 509. Here, Oregon Clinic has not met its burden of alleging sufficient facts to state a claim for a covered loss under the Policy—*i.e.* Oregon Clinic has not alleged any "direct physical loss or damage" to property.

### A.    Oregon Clinic has failed to show that any property sustained actual physical damage or was physically lost, as required under Oregon law.

As shown above, each of the relevant coverages in Oregon Clinic's Policy cannot be triggered absent direct physical loss or damage to covered property. Consistent with case law from across the country, Oregon courts have already determined that "direct physical damage" requires a "distinct and demonstrable" physical alteration of property. *Columbiaknit*, 1999 WL 619100, at *7. In *Columbiaknit*, rainwater entered the plaintiff's building, saturating some clothes and exposing the others to high humidity. *Id.*, at *1. In determining whether the clothes that were exposed to high humidity met the plaintiff's policy's "direct physical loss or damage" threshold, the court found that "direct physical damage" requires a "distinct and demonstrable" physical alteration of property and that "[t]he mere adherence of molecules to porous surfaces, without more, does not equate to physical loss or damage." *Id.*, at *7.[7]

---

[7] Federal courts dismissing COVID-19 business interruption cases have cited to *Columbiaknit* favorably when dismissing cases just like Oregon Clinic's. *See S. Florida Ent. Associates, Inc. v. Hartford Fire Ins. Co.*, 2020 WL 6864560, at *6 (S.D. Fla. Nov. 13, 2020) (dismissing similar COVID-19 business interruption case brought by medical outpatient company and noting that numerous courts "have found—both before and in response to the COVID-19-pandemic—that a direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."); *Graspa Consulting,*

Oregon courts have also determined that "physical loss" excludes "indirect, nonphysical losses." In *Benjamin Franklin*, Judge Panner held that where property remains "physically intact and undamaged" and the "only loss is economic," the threshold of "direct physical loss" is not met. 793 F. Supp. at 263.

Applying the holdings in *Columbiaknit* and *Benjamin Franklin* here, Oregon Clinic's claims fall well outside the accepted meaning of direct physical loss or damage to property. There are no factual allegations in the Complaint demonstrating that any covered property suffered a "distinct and demonstrable" physical alteration, as is required by *Columbiaknit*, or that Oregon Clinic's property was anything other than "physically intact and undamaged." Instead, the Complaint's allegations merely recite in conclusory fashion that Oregon Clinic met the elements of coverage without identifying any specific property that incurred physical loss or damage. Compl. at ¶ 2 ("The Oregon Clinic sustained direct physical loss or damage to property at or near its insured locations, and to dependent properties, resulting in significant interruption of and loss of business income, and costs to ensure patient and employee safety, to repair its damaged property, and to mitigate the loss of income."). Oregon Clinic has not alleged any facts indicating that COVID-19 physically altered a fixture or improvement on even one of its covered properties. Rather, at most, Oregon Clinic's allegations reflect that (i) a worldwide pandemic exits, and (ii) Oregon Clinic incurred a purely economic loss of revenue.

**B.    Courts have consistently found the pandemic does not cause physical loss or damage.**

While no Oregon court has yet ruled on a similar claim for losses arising from COVID-19, more than 300 cases across the country have applied the same fundamental legal principles to find

---

*Inc. v. United Nat'l Ins. Co.*, 2021 WL 199980, at *8 (S.D. Fla. Jan. 20, 2021) (dismissing complaint with identical "direct physical or damage" threshold and finding that intangible losses due to COVID-19 are not covered).

that economic losses from COVID-19 do not meet the "direct physical loss or damage" threshold. Specifically, Oregon's neighboring states, Washington and California, both known for being favorable to insureds, have repeatedly found that economic losses from the COVID-19 pandemic are not covered under property insurance policies.

    *1.  Washington*

    Washington is well known as an insured-friendly state and had numerous businesses file business interruption actions nearly identical to Oregon Clinic's. All of the federal actions in Western Washington were transferred to Judge Rothstein, a 40-year veteran of the federal bench. The plaintiffs in these actions included restaurants,[8] hotels,[9] local airlines,[10] coffee shops,[11] and, like Oregon Clinic here, medical providers.[12] Judge Rothstein consolidated all the actions by insurer group, some of which included more than a dozen individual cases, and set a briefing schedule for dismissal motions. Over the course of more than 12 months, Judge Rothstein took in hundreds of pages of briefing on the very issues faced by this Court. On May 28, 2021—just a little over two weeks ago—Judge Rothstein released her ruling addressing the various arguments made by more than fifteen distinct plaintiff's law firms representing numerous and varied plaintiffs and plaintiff groups. *Nguyen*, 2021 WL 2184878.

    Noting that an "overwhelming consensus" has formed nationally, Judge Rothstein uniformly dismissed the claims of hundreds of businesses in a comprehensive 75-page ruling. *Id.*,

---

[8] *See, e.g.*, *ES Restaurant Group, Inc. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-01193-BJR (W.D. Wash.).

[9] *See, e.g.*, *Worthy Hotels, Inc. v. Fireman's Fund Ins. Co.*, No. 2:21-cv-00025-BJR (W.D. Wash.).

[10] *See, e.g.*, *Weimac, LLC. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-01515-BJR (W.D. Wash.).

[11] *See, e.g.*, *Caffe Vita Coffee Roasting Co. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-01079-BJR (W.D. Wash.).

[12] *See, e.g.*, *Pacific Endodontics PS v. Ohio Casualty Ins. Co.*., No. 2:20-cv-00620-BJR (W.D. Wash.).

at *1. Finding that "COVID-19 does not cause the physical loss or damage to property required as a condition precedent to trigger coverage," Judge Rothstein's thorough opinion addressed the exact same issues that are the gravamen of Oregon Clinic's Complaint. *Id*. Like the *Columbiaknit* and *Benjamin Franklin* courts, Judge Rothstein broke down the separate meanings of "direct physical loss" and "direct physical damage." Beginning with direct physical damage, Judge Rothstein rejected the same arguments Oregon Clinic presents here, namely that by adhering to the surface of a structure the coronavirus somehow contaminates and thereby alters physical surfaces. *Id*., at *10. The court found that "COVID-19 hurts people, not property … the pandemic impacts human health and human behavior, not physical structures." *Id*. Noting that "all that is needed to decontaminate [property] is to 'wipe the virus off the surface with disinfectant,'" the court concluded that "COVID-19 does not cause direct physical damage to property." *Id*. (internal edits accepted).

Turning to "direct physical loss," Judge Rothstein found that this threshold requires the "inability to physically own or manipulate the property, such as theft or total destruction." *Id*. Specifically, "to trigger coverage under a direct physical loss theory, an outside peril must cause an inability to interact with the property *because of an alteration to its physical status*." *Id*., at *11 (emphasis added). Considering this, the Court found that COVID-19 and the various stay-at-home orders "did not cause dispossession of the buildings, chairs, dental tools, etc." at issue. *Id*. "In other words, 'Plaintiffs' operations are not what is insured—the building and the personal property in or on the building are.'" *Id*. Judge Rothstein noted her agreement with the overwhelming majority of courts, stating "[a]s other courts have adeptly summarized, the 'property did not change. The world around it did." *Id*.

The numerous cases dismissed by Judge Rothstein included eight cases against Fireman's and its affiliates, three of which used the exact same policy at issue here (the remaining five used a policy similar in all material aspects, only requiring "direct physical loss of or damage to property"—the addition of the word "of" being a distinction courts have found makes no difference in the overall analysis).[13] *Id.*, at *26–29. Judge Rothstein found that losses due to the COVID-19 pandemic were not covered under any of the Fireman's policies, dismissing both the plaintiffs' contractual and extra-contractual claims. *Id.* The court specifically found that coverage was inapplicable under the exact same Business Income, Communicable Disease, Civil Authority, Dependent Property, and Business Access coverages identified in Oregon Clinic's Complaint and found that any other provision requiring "direct physical loss or damage" (such Expediting Expense coverage, Extended Business Income and Extra Expense coverage, and Ordinance or Law coverage) was inapplicable as well. *Id.*

### 2.  California

Courts in California, another state traditionally friendly to insureds, have overwhelmingly found that the COVID-19 pandemic does not cause "direct physical loss or damage" to property, considering the same allegations Oregon Clinic asserts here. For example, in *Out West Restaurant Group Inc. v. Affiliated FM Ins. Co.*, the plaintiff alleged that "the COVID-19 pandemic and presence of the virus in the air [and] … on surfaces, also causes physical alteration of the integrity

---

[13] *See ES Rest. Group, Inc. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-01193-BJR (W.D. Wash.); *Worthy Hotels, Inc. v. Fireman's Fund Ins. Co.*, No. 2:21-cv-00025-BJR (W.D. Wash.) (same policy); *Weimac, LLC. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-01515-BJR (W.D. Wash.) (same policy); *Caffe Vita Coffee Roasting Co. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-01079-BJR (W.D. Wash.) (same policy); *Naccarato Restaurant Group, Inc. v. Fireman's Fund Ins. Co.*, No. 2:20-cv-06108-BJR (W.D. Wash.); *Canlis Restaurants, Inc. v. Fireman's Fund Ins. Co.*, No. 2:21-cv-00373-BJR (W.D. Wash.); *13 Coins Management LLC v. National Surety Corp.*, No. 2:21-cv-00178-BJR (W.D. Wash.); *Neighborhood Grills Management LLC, et al. v. National Surety Corp.*, No. 2:21-cv-00374-BJR (W.D. Wash.).

of the property and causes physical loss." 2021 WL 1056627, at *1. Specifically, the policyholder asserted that COVID-19 "*transforms* property, specifically indoor air and surfaces, from a safe condition to a dangerous and potentially deadly condition"—nearly identical to Oregon Clinic's allegation that "the presence of the Covid-19 virus *transforms* everyday surfaces and objects into fomites, causing a tangible change of the property." *Id*. at *3 (emphasis added); Compl. at ¶ 59 (emphasis added). The Northern District of California dismissed the complaint, finding that there must "either be a physical change in the condition or a permanent dispossession of the property" to establish direct physical loss or damage. *Id*. at *4. Critically, the court noted that "the overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage." *Id*. (collecting cases).

California courts have also rejected Oregon Clinic's argument that "respiratory droplets" or "droplet nuclei" cause direct physical loss or damage. *See* Compl. at ¶¶ 47, 50, 61. Recently, the court in *Baker v. Oregon Mutual Ins. Co.* rejected the argument that property suffered physical loss or damage because "hazardous human respiratory droplets posed an immediate danger to any person(s) physically present on the premises" and that it was "'impracticable to operate [the] business without immediately exposing the insured premises to' the hazardous droplets." 2021 WL 1145882, at *3 (N.D. Cal. Mar. 25, 2021). The court found that such allegations "do not plausibly plead that the virus caused physical loss or damage" and noted that numerous federal courts that have "addressed the 'respiratory droplets' and physical-damage theories have reached the same conclusion." *Id*. (collecting cases); *see also Wellness Eatery La Jolla LLC v. The Hanover Ins. Grp.*, 2021 WL 389215, at * 6–7 (S.D. Cal. Feb. 2, 2021) (rejecting "respiratory droplet" theory

and holding the presence of COVID-19 did not "qualif[y] as physical damage to property because the virus harms human beings, not property") (collecting cases).[14]

In total, California courts alone have dismissed more than 65 cases just like Oregon Clinic's, repeatedly rejecting the same claims presented in the Complaint. *See, e.g.*, *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co.*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (to interpret the phrase "direct physical loss of" as encompassing "deprivation of property without physical change in the condition of the property" would be "without any 'manageable bounds'"); *Islands Restaurants, LP v. Affiliated FM Ins. Co.*, 2021 WL 1238872, at *4 (S.D. Cal. Apr. 2, 2021) ("[T]he Policy's 'physical loss or damage' requirement is not ambiguous. California courts consistently interpret these coverage triggers to require a 'distinct, demonstrable, physical alteration' to property."); *Motiv Grp., Inc. v. Cont'l Cas. Co.*, 2021 WL 1240779, at *3 (C.D. Cal. Apr. 1, 2021) ("'losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of the phrase.' … Further, only a 'distinct, demonstrable, physical alteration' of property will amount to physical loss or damage that may trigger coverage."); *Daneli Shoe Co. v. Valley Forge Ins. Co.*, 2021 WL 1112710, at *3

---

[14] The California federal courts' analysis is mirrored by California's state courts, which only days ago dismissed a similar case against AGCS Marine Insurance Company. In *George Gordon Enterprises, Inc. dba Playland Arcade v. AGCS Marine Insurance Company, et al.*, Judge Carter of the Los Angeles Superior Court found:

> The loss was not physical, but rather an interruption of business operations. Plaintiff's property itself did not suffer a loss: Plaintiff does not allege that its personal or real property suffered damage or was lost such that it can no longer be used. Plaintiff does not allege that an employee or any person wearing appropriate protective gear would be physically unable to enter onto or used Plaintiffs real or personal property. Indeed, if fully vaccinated individuals can now enter onto Plaintiffs real property and utilize Plaintiffs personal property, Plaintiff has not pled what physical change occurred to its real and personal property which enabled such patronage to resume. What Plaintiff alleges is a loss of the ability to commercial exploit its property.

Todaro Decl. Ex. F.

17 – DEFENDANT'S MOTION TO DISMISS

(S.D. Cal. Mar. 17, 2021) ("The presence of COVID-19 on surfaces does not 'physically alter' the property, as understood in the ordinary sense. Without evidence of a 'distinct, demonstrable, physical alteration,' Plaintiff does not have a valid claim.").[15]

### 3.  Courts across the country are in accord

Courts across the country have similarly rejected claims that the COVID-19 pandemic causes "direct physical loss or damage" to property. These courts have found that "[t]he critical policy language here [direct physical loss or damage] … unambiguously, requires some form of actual, physical damage to the insured premises" to trigger coverage. *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 2020 WL 7062449, at \*6–7 (S.D. Fla. Nov. 17, 2020)) (*citing Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014)); *see also Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at \*3 (N.D. Ill. Sept. 21, 2020) (denying coverage because "[t]he coronavirus does not physically alter the appearance, shape, color, structure or other material dimension of the property.").

---

[15] *See also Caribe Restaurant & Nightclub, Inc. v. Topa Ins. Co.*, 2021 WL 1338439, at \*3-4 (C.D. Cal. Apr. 9, 2021); *Barbizon School of San Francisco, Inc. v. Sentinel Ins. Co. Ltd.*, 2021 WL 1222161 (N.D. Cal. Mar. 31, 2021); *Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 1226447, (S.D. Cal. Mar. 30, 2021); *Sky Flowers, Inc. v. Hiscox Ins. Co.*, 2021 WL 1164473 (C.D. Cal. Mar. 26, 2021); *Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.*, 2021 WL 1060230 (C.D. Cal. Mar. 19, 2021); *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 2021 WL 774141 (N.D. Cal. Feb. 25, 2021); *Selane Products, Inc v. Cont'l Cas. Co.*, 2021 WL 609257 (C.D. Cal. Feb. 8, 2021); *Protégé Rest. Partners LLC v. Sentinel Ins. Co. Ltd.*, 2021 WL 428653, (N.D. Cal. Feb. 8, 2021); *Gym Mgmt. Services, Inc. v. Vantapro Specialty Ins. Co.*, 2021 WL 647528 (C.D. Cal. Feb. 1, 2021); *James Colgan v. Sentinel Ins. Co., Ltd.*, 2021 WL 472964 (N.D. Cal. Jan. 26, 2021); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180 (N.D. Cal. Jan. 21, 2020); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co.*, 2021 WL 141180, (N.D. Cal. Jan. 13, 2021); *BA LAX, LLC et al. v. Hartford Fire Ins. Co.*, 2021 WL 144248 (C.D. Cal. Jan. 12, 2021); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021); *Rialto Pockets, Inc. v. Certain Underwriters at Lloyd's*, 2021 WL 267850 (C.D. Cal. Jan. 7, 2021); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, 2021 WL 25048 (N.D. Cal. Jan. 4, 2021); *Jonathan Oheb, MD, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 7769880 (C.D. Cal. Dec. 30, 2020); *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7696080, (N.D. Cal. Dec. 28, 2020).

For example, in *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, the plaintiffs argued that they had "curtailed and suspended their usual and customary business operations" due to COVID-19 and civil authority orders. 2020 WL 7351246, at *3 (W.D. Tex. Dec. 14, 2020). Like here, the plaintiffs argued that their property was physically lost because "use of and access to the operations of the restaurant properties for their intended purposes was suspended, and had to be physically altered, limited or prohibited," and that COVID-19 damaged covered property because of "the presumed presence of this contagious, infectious disease on physical surfaces in buildings, in the air, and in human beings." *Id*. at *5–7. The court firmly disagreed, noting that physical loss or damage requires there to be some "'distinct, demonstrable, physical alteration of the property,' as opposed to merely economic losses." *Id*. at *5. Because "[t]he virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant," the court found that "[i]n essence, Plaintiffs seek to recover economic damages they sustained as a result of the COVID-19 pandemic and associated civil authority orders." *Id*. at *7, 10. The court thus dismissed without leave to amend. *Id*. at *11.

In total, more than 300 cases across the country have rejected claims just like Oregon Clinic's. While Oregon Clinic argues that it is "statistically certain" the virus was on its property (Compl. at ¶¶ 40, 81, 82), the court in *7th Inning Stretch LLC v. Arch Ins. Co.* already found that such speculation is insufficient to trigger coverage. 2021 WL 1153147, at *2 (D.N.J. Mar. 26, 2021) ("[The insured]'s general statements that it was 'statistically certain' that the COVID-19 virus was 'present' on its property 'for some period of time since their closures' is also insufficient. Even if true, the presence of a virus that harms humans but does not physically alter structures does not constitute coverable property loss or damage.") (internal citation omitted). And though Oregon Clinic claims that "[t]he Covid-19 virus adheres to surfaces and objects, harming and

physically changing and physically altering those objects by becoming a part of their surface" (Compl. at ¶60), the Court in *Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.* found that coronavirus "does not endure beyond a brief passage of time or a proper cleaning, let alone render the property permanently uninhabitable or unusable." 2021 WL 1131640, at *4 (D. Mass. Mar. 24, 2021).[16]

The consensus is clear: "COVID-19 impacts human health and human behavior. COVID-19 does not impact physical structures, other than to require additional cleaning and sanitizing of those structures. Therefore, all of the claims in the Complaint must be dismissed with prejudice." *R.T.G. Furniture Corp. v. Hallmark Specialty Ins. Co.*, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021); *see also Nguyen*, 2021 WL 2184878, at *1 (An "overwhelming consensus [] has formed" finding that "COVID-19 does not cause the physical loss or damage to property required as a condition precedent to trigger coverage.").

## C.    Interpretation of "direct physical loss or damage" to encompass non-physical losses would render policy language meaningless.

Oregon Clinic's Business Income, Dependent Property, and Communicable Disease coverages only provide coverage for lost income occurring during the "period of restoration." The

---

[16] *See also Bachman's Inc. v. Florists' Mut. Ins. Co.*, 2021 WL 981246, at *4 (D. Minn. Mar. 16, 2021) ("[T]here can be no dispute that the virus can be easily eliminated with routine cleaning procedures."); *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, 2021 WL 857361, at *5 (D. Ariz. Mar. 5, 2021) ("[The insureds] could easily remedy the problem by diligently cleaning, and clearly no repairs were necessary."); *Town Kitchen LLC v. Certain Underwriters at Lloyd's*, 2021 WL 768273, at *7 (S.D. Fla. Feb. 26, 2021) ("To the extent it is a physical harm, such as COVID-19 particles present on surfaces in the restaurant, those can be easily cleaned."); *Karmel Davis & Assocs., Att'ys-at-L., LLC v. Hartford Fin. Servs. Grp., Inc.*, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) ("The mere fact that [the COVID-19 virus] may rest unseen on surfaces before it can be cleaned up with a disinfectant" does not indicate "that it causes any sort of physical change to the property it touches."); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) ("[D]isinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces."); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("[R]outine cleaning and disinfecting can eliminate the virus on surfaces."); *6593 Weighlock Dr., LLC v. Springhill SMC Corp.*, 2021 WL 1419049, at *6 (N.Y. Sup. Ct. Onondaga Cnty. Apr. 13, 2021) ("[T]here is no physical loss of or damage to property when 'an item or structure . . . merely needs to be cleaned.'" (citation omitted)).

20 – DEFENDANT'S MOTION TO DISMISS

period of restoration begins on the date of physical loss or damage and ends on the date when the premises "should be *repaired, rebuilt, or replaced* with reasonable speed." *See* Policy, p. 58 of 63. The fact that property must be physically damaged to the point of requiring repairs or replacement in order to qualify for coverage demonstrates that "direct physical loss or damage to" property requires physical alteration of the property (*i.e.* something broken or torn is in need of repair or something destroyed or lost that must be replaced). An interpretation of "direct physical loss or damage to property" to encompass intangible losses that do not alter the covered property would render the policy language relating to "repair[], rebuil[ding], or replac[ment]" mere surplusage and the temporal period of coverage described in the policies never-ending and nonsensical. *See Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019) ("Courts interpreting the language of contracts 'should give effect to every provision,' and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'"). Nowhere in the Complaint does Oregon Clinic allege that its business was suspended in order to "repair[], rebuil[d], or replace[]" covered property.

Many courts have dismissed COVID-19 business interruption claims for this very reason. For instance, in *Toppers Salon & Health Spa, Inc. v. Travelers Property Casualty Co. of America*, the owner of a spa brought suit under an insurance policy for lost revenue resulting from COVID-19 and the stay-at-home orders. 2020 WL 7024287 (E.D. Pa. Nov. 30, 2020). The court found that the policy's reference to a "period of restoration," and the premises being "repaired, rebuilt or replaced," made "clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement. The Covid-19 pandemic does not fall within that definition." *Id.* at *4. *See also Ascent Hosp. Mgmt. Co., LLC v. Employers Ins. Co. of Wausau*, 2021 WL 1791490, at *9–11 (N.D. Ala. May 5, 2021) (the definition of "period of liability" "confirms that direct physical loss or damage requires an actual physical change to property" and

government orders "do not cause actual physical change to property"); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020) (insured's argument "would render large parts of the '*period of restoration*' definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced"); *Daneli Shoe*, 2021 WL 1112710, at *4 ("Here, the period of restoration never began, since Plaintiff's premises never suffered any 'physical loss or damage.' The fact that the Plaintiff's property does not require any 'rebuilding, repairing, or replacing' for Plaintiff to regain possession only proves this point.'"); *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*, 2020 WL 7641184, at *1 (M.D. Tenn. Dec. 23, 2020) (the "period of restoration" definition "informs that the loss or damage to the property must be physical, affecting the structure of the property").[17]

D.    **Loss of use of property does not constitute "direct physical loss or damage."**

Oregon Clinic's allegation that it "experienced direct physical loss or damage" because its property was "incapable of being used for its intended purpose" has been near-unanimously rejected by hundreds of courts across the country. Compl. at ¶ 58. As the Southern District of New York stated, "nearly every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property." *Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405, at *8 (S.D.N.Y. Dec. 11, 2020) (emphasis added). The court in *Town Kitchen* recently observed: "the key difference between the Plaintiff's loss of use theory and something clearly covered—like a

---

[17] *See also W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Co.*, 498 F. Supp. 3d 1233, 1238 (C.D. Cal. 2020) (policy's "period of restoration" provision implies that "loss or damage be physical in nature"); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131556, at *7 (E.D. Pa. Jan. 14, 2021) (holding that if "mere loss of use counted as 'direct physical loss of' property, the 'period of restoration' language would be rendered a nullity."); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) (finding coverage without physical loss or damage would render "meaningless" requirement that coverage period ends when property should have been "repaired, rebuilt, or replaced").

hurricane—is that the property did not change. The world around it did. And for the property to be useable again, no repair or change can be made to the property—the world must change." 2021 WL 768273, at *5. "[T]emporary loss of use, without some sort of actual change in or physical damage to the insured property, does not suffice." *Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020).

In what has become a seminal case for COVID-19 property insurance claims, the Central District of California dealt with a mirror image argument wherein policyholder 10E sought to recover business income losses under the "Business Income and Extra Expense" and "Civil Authority" provisions of its property insurance policy. *10E, LLC v. Travelers Indem. Co. of Connecticut*, 483 F. Supp. 3d 828, 835 (C.D. Cal. 2020).[18] The *10E* court found that "[p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration'" and that "losses from inability to use property do not amount to 'direct physical loss of or damage to property.'" *Id.* at 835–36. In short, "[a]n insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property." *Id.* at 836. As is the case with Oregon Clinic's clients, "while public health restrictions kept the restaurant's 'large groups' and 'happy-hour goers' at home instead of in the dining room or at the bar, Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its 'elegantly sophisticated surrounding.'" *Id.*[19]

---

[18] *10E* has been cited more than 70 times *with approval* by courts across the country in just a matter of months.

[19] Courts have also repeatedly rejected Oregon Clinic's allegation that it suffered physical loss or damage due to required "social distancing." Compl. at ¶¶ 88, 94; *see Restaurant Management Group v. Zurich American Ins. Co.*, 2021 WL 1937314, at *6 (N.D. Ga. Mar. 16, 2021) ("Plaintiffs' argument that social distancing requirements led to a change in table arrangements and a reduction in capacity does not demonstrate a direct physical loss of their properties.").

E.    **Civil Authority Coverage is also inapplicable.**

Any argument by Oregon Clinic that the Civil Orders trigger Civil Authority Coverage is similarly misplaced. Civil Authority Coverage requires "the necessary suspension of [its] operations caused by action of civil authority that prohibits access to a [covered] location" and that the prohibition arose "from direct physical loss or damage to property other than at such location." *See* Policy, p. 18 of 63. First, as is discussed *supra*, direct physical loss or damage requires a "distinct and demonstrable" physical alteration of property—facts plainly not alleged in the Complaint. *See Columbiaknit*, 1999 WL 619100, at *7; *Benjamin Franklin* 793 F. Supp. at 263.

Second, even if direct physical loss or damage was alleged, Civil Authority Coverage requires a causal link between that direct physical loss or damage and a *subsequent* civil order. *See Dickie Brennan & Co*. v. *Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (Civil Authority provisions require "proof of a causal link between prior damage and [the] civil authority action."). It is apparent from the face of the Civil Orders that they were issued not in response to *prior* property damage, but to limit the *future* spread of COVID-19 from human to human. *See* Todaro Decl. Ex. B (Executive Order 20-08, stating that its purpose is "to slow the spread of the disease, and to protect Oregonians at the highest risk of contracting the disease"). Courts across the country have repeatedly dismissed civil authority claims where, as here, plaintiffs could not allege a causal link between prior property damage and the government's COVID-19 orders, as such orders were issued to limit the spread of the coronavirus and not in response to physical loss or damage at any particular location. *See, e.g.*, *Mortar and Pestle*, 2020 WL 7495180, at *5 (dismissing civil authority claim where it was "apparent from the plain language of the cited civil authority orders that such directives were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property"); *Tralom Inc. v. Beazley USA Servs., Inc*., 2020 WL 8620224, at *6 (C.D. Cal. Dec. 29, 2020) (dismissing civil authority claim because "[t]he Government Orders

cannot be both the cause of the physical loss and the result of the physical loss"); *Hajer* v. *Ohio Sec. Ins. Co.*, 2020 WL 7211636, at *4 (E.D. Tex. Dec. 7, 2020) ("The cited acts of civil authority here are not a response to actual damage to adjacent property. Instead, they were taken to mitigate possible harms from an ongoing pandemic.").[20] Similar to these cases, Oregon Clinic has failed to allege any nexus between the Civil Orders and prior physical loss of or damage, rendering Civil Authority Coverage inapplicable.[21]

Third, Oregon Clinic has not alleged particularized facts showing that the Civil Orders were caused by direct physical loss or damage to property *other than covered property*, as is required by the Civil Authority Coverage—*i.e.* Oregon Clinic does not allege that physical loss or damage at one property resulted in action by a civil authority, which then closed Oregon Clinic's property. Instead, Oregon Clinic claims that its properties were affected by the same Civil Orders as every other property. *See* Compl. at ¶¶ 71–77. The court in *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, rejected coverage under these very circumstances, finding that civil authority coverage was inapplicable because the plaintiff "[did] not allege that these closures of *neighboring* properties 'direct[ly] result[ed]' in closure of Plaintiff's *own* premises, as the Civil Authority provisions require. Instead, the Complaint alleges that Plaintiff was forced to close for the same reason as its neighbors – the risk of harm to individuals on its own premises due to the pandemic." 2020 WL 7360252, at *4 (S.D.N.Y. Dec. 15, 2020) (emphasis original); *see also Sandy Point*

---

[20] *Mudpie, Inc.* v. *Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *7 (N.D. Cal. Sept. 14, 2020) ("Because the orders were preventative—and absent allegations of damage to adjacent property—the complaint does not establish the requisite causal link between prior property damage and the government's closure orders.").

[21] As a result, Oregon Clinic's claim that it suffered direct physical loss or damage to covered properties due to the Civil Orders establishes that Civil Authority Coverage is inapplicable. Civil Authority Coverage "requires the [alleged] physical damage to prompt the act of civil authority, not the other way around." *Terry Black's Barbecue*, 2020 WL 7351246, at *8.

*Dental*, 2020 WL 5630465, at *3 ("Just as the coronavirus did not cause direct physical loss to plaintiff's property, the complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property."); *10E*, 2020 WL 5359653, at *5 (dismissing civil authority claim where plaintiff failed to allege "actual cases of 'direct physical loss of or damage to property' at other locations"). The Complaint here suffers from the same deficiency: it does not allege that operations at a covered property were suspended by a civil authority due to the prior physical loss or damage to property at another location, and that such suspension prohibited access to Oregon Clinic's property.

Fourth, courts interpreting civil authority coverage have required that access to the insured's location be entirely prohibited, not merely more difficult. The court in *Terry Black's Barbecue* dealt with this very issue. 2020 WL 7351246, at *6–7. After finding that "regulation[s] prohibiting people from patronizing a business is not a tangible alteration [of] any property," the court stated that "Plaintiffs' businesses, moreover, were never shut down as a result of the civil authority orders. They continued to offer take-out services and, subsequently, limited capacity dine-in services. Thus, Plaintiffs were not denied access to or use of their property." *Id.*; *see also Michael Cetta*, 2020 WL 7321405, at *12 ("[U]nder the plain meaning of the Policy, if employees (but not patrons) were allowed access to the indoor portions of the restaurant, civil authority did not prohibit access."); *4431, Inc.* v. *Cincinnati Ins. Cos.*, 2020 WL 7075318, at *11 (E.D. Pa. Dec. 3, 2020) ("the ability to operate in almost any capacity, even on a limited basis, precludes [civil authority] coverage."); *Sandy Point Dental*, 2020 WL 5630465, at *3 (dismissing civil authority claim where "coronavirus orders . . . limited plaintiff's operations" but did not "prohibit[] access to plaintiff's premises"). Oregon Clinic does not allege that an action by a civil authority completely prohibited access to covered properties—indeed, it admits that it continued operating

its premises. *See* Compl. at ¶ 77 (admitting that patrons and employees were on the premises at

least through November 2020), ¶ 86 (admitting that offices are still providing services to patients).

Thus, Civil Authority Coverage under the Extension is not triggered.

### VI.    OREGON CLINIC FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT COVERAGE UNDER THE LOSS ADJUSTMENT EXPENSE EXTENSION.

Oregon Clinic also claims coverage under the following 'Loss Adjustment" extension of

the Policy:

> a. *If covered loss or damage occurs under this Coverage Form*, then
> we will pay the necessary loss adjustment expenses you incur that
> would not have been incurred had there not been a covered loss. Loss
> adjustment expenses include but are not limited to:
>> (1) Extra wages paid to your employees for preparing
>> inventories;
>> (2) Expenses incurred to document your **business income** loss
>> or **extra expense** sustained;
>> (3) Public Accountant or Certified Public Accountant fees;
>> (4) The cost of appraisals; or
>> (5) Other expenses incurred to obtain loss data in support your
>> claim or to complete your proof of loss.
> b. We will not pay under Loss Adjustment Expense for:
>> (1) Any expenses or fees paid to legal counsel, public adjusters,
>> insurance agents or brokers, property managers, consultants, or
>> any of their employees, representatives or consultants; any of
>> your subsidiaries or affiliates; or
>> (2) Costs you incur to prove if a loss is a covered loss under this
>> Policy.
> c. The most we will pay under this Extension of Coverage in any one
> occurrence or **loss event** is the Limit of Insurance shown in the
> Declarations applicable to Loss Adjustment Expense.

*See* Policy, p. 23 of 63 (**emphasis** original; *emphasis* added). As is apparent from the plain

language of the provision, the Loss Adjustment extension is only applicable if coverage is

established. As is shown above, COVID-19 and the Civil Orders do not cause direct physical loss

or damage and thus are not a "covered loss or damage."

### VII.    COVERAGE IS EXCLUDED BY THE VIRUS EXCLUSION.

In the alternative, Oregon Clinic's Complaint must be dismissed because coverage is barred

by the Policy's virus exclusion. The Policy states:

1. Regardless of how the cause of loss occurs, we will not pay for direct physical loss, damage, or expense caused by or resulting from the following causes of loss: …

    h. Mortality and Disease

    Mortality, death by natural causes, disease, sickness, any condition of health, bacteria, or **virus**.

Policy, pp. 7–8 of 63 (emphasis added). Here, "[t]here is no other way to characterize COVID-19 than as a virus which causes physical illness and distress. Therefore, the virus exclusion unambiguously bars coverage for plaintiff's claims due to COVID-19." *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020). Courts across the country have confirmed that such virus exclusions preclude coverage. *See, e.g.*, *Toppers Salon*, 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020); *Boxed Foods Co., LLC v. California Capital Ins. Co.*, 2020 WL 6271021, at *5 (N.D. Cal. Oct. 26, 2020); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 910 (N.D. Cal. 2020); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *9 (S.D. Fla. Nov. 2, 2020).

In fact, Judge Rothstein found this exact virus exclusion precluded coverage in the three Fireman's matters in the Western District of Washington using the exact same policy, as did the District Court of New Jersey in another Fireman's case. *Nguyen*, 2021 WL 2184878, at *27; *Boulevard Carroll Entm't Grp. v. Fireman's Fund Ins. Co.*, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020). Like in the cases above, even if this Court found direct physical loss or damage to covered property, the Policy's Virus Exclusion bars Oregon Clinic's claims.

## VIII.   THE COURT SHOULD DISMISS WITHOUT LEAVE TO AMEND.

Where a district court grants a motion to dismiss, it need not grant leave to amend were the complaint could not be saved by an amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Thus, leave to amend may be denied where "the court determines that the allegation of other facts consistent with the challenged

pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend, accordingly, is "properly denied ... if amendment would be futile." *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, amendment would be futile. As Judge Rothstein stated in her recent Order, "COVID-19 does not cause direct physical loss of covered property, and such loss is required to trigger coverage, there is no way that Plaintiffs can amend their complaints to cure this deficiency. As such, the Court will deny Plaintiffs' claims with prejudice." *Nguyen*, 2021 WL 2184878, at *17. *See also Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *7 (granting motion for judgment on the pleadings in COVID-19 insurance coverage case without leave to amend); *Out West*, 2021 WL 1056627, at *6 (N.D. Cal. Mar. 19, 2021) ("The Court will not provide leave to amend because, in light of Plaintiffs' allegations regarding COVID-19 and the Policy provisions regarding direct physical loss of property, doing so would be futile."); *Jonathan Oheb MD, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 7769880, at *4 (C.D. Cal. Dec. 30, 2020) (dismissing COVID-19 business interruption case without leave to amend); *Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*, 2021 WL 1889866, at *6 (E.D. Mo. May 11, 2021) (same); *M&E Bakery Holdings, LLC v. Westfield Nat'l Ins. Co.*, 2021 WL 1837393, at *5, *7 (N.D. Ill. May 7, 2021) (same).

## IX.    CONCLUSION

In order for there to be direct physical loss or damage to property there must be a "distinct and demonstrable" physical alteration of the insured property. Oregon Clinic does not plead such facts and cannot do so by way of further amendment. Fireman's respectfully requests that the Court dismiss Oregon Clinic's Complaint with prejudice.

I hereby certify that the above brief complies with the word and page limits set forth in Local Rule 7-2(b).

Respectfully submitted this 14th day of June, 2021.

> *s/ Anthony Todaro*
> Anthony Todaro, OSB No. 150714
> DLA Piper LLP (US)
> 701 Fifth Avenue, Suite 6900
> Seattle, Washington 98104-7029
> Tel:    206.839.4800
> Fax:    206.839.4801
> E-mail: anthony.todaro@us.dlapiper.com
>
> *Attorney for Defendant*
> *Fireman's Fund Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated this 14th day of June, 2021.

*s/ Alicia Morales*
Alicia Morales, Legal Practice Specialist

WEST\294663364.2