IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THE OREGON CLINIC, PC, an Oregon professional corporation,<br><br>                Plaintiff,<br><br>      v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, a California corporation,<br><br>                Defendant. | Case No. 3:21-cv-00778-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

This matter comes before the Court on Fireman's Fund Insurance Company's ("FFIC") motion to dismiss The Oregon Clinic, PC's ("TOC") complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court grants FFIC's motion to dismiss.

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND[1]

TOC is an "Oregon professional corporation consisting of more than thirty . . . medical specialties and subspecialties with over 263 providers practicing at fifty-seven locations in the Portland metro area." (Compl. at 2.) FFIC is a California-based insurance company that sold TOC an "all-risk" "Property-Gard Pinnacle" insurance policy (the "Policy"). (Compl. at 3.) "The Policy was effective at all times material to this litigation including in . . . March, 2020." (Compl. at 4.)

The Policy provides coverage for, among other things, "loss resulting from all 'risks of direct physical loss or damage' to covered property," subject to certain exceptions. (*Id.*) TOC alleges that beginning in March 2020, as a result of the COVID-19 pandemic, the presence of COVID-19 in its offices, and "various governmental orders," TOC "sustained direct physical loss or damage to property at or near its insured locations, and to dependent properties, resulting in significant interruption of and loss of business income, and costs to ensure patient and employee safety, to repair its damaged property, and to mitigate the loss of income." (Compl. at 2.)

TOC alleges that FFIC improperly denied its claims for coverage, and TOC therefore filed this action on May 20, 2021, seeking a declaration of rights and alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl. at 2, 34-38.) On June 14, 2021, FFIC moved to dismiss TOC's complaint pursuant to FED. R. CIV. P. 12(b)(6). (Def.'s Mot. to Dismiss ("Mot."), ECF No. 7.)

///

///

---

[1] This Opinion cites primarily to the CM/ECF-generated document and page numbers located at the top of each page.

**LEGAL STANDARDS**

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (simplified).

**DISCUSSION**

FFIC raises three primary arguments in support of its motion to dismiss TOC's complaint. First, FFIC argues that TOC has not alleged any "direct physical loss or damage" to property. (Mot. at 21.) Second, FFIC argues that TOC has not alleged facts sufficient to support coverage under the Policy's "Loss Adjustment Expense" extension. (Mot. at 37.) Third and finally, FFIC argues that the Policy's mortality and disease exclusion bars coverage. (*Id.*)

**I.    INSURANCE POLICY INTERPRETATION**

"In Oregon, the interpretation of an insurance policy is a question of law."[2] *Factory Mut. Ins. Co. v. Peri Formworks Sys., Inc.*, 223 F. Supp. 3d 1133, 1137 (D. Or. 2016) (citing *Hoffman Constr. Co. v. Fred S. James & Co.*, 836 P.2d 703, 706 (Or. 1992)). As the Oregon Supreme

---

[2] As the parties have acknowledged (*see, e.g.*, Pl.'s Corrected Resp. at 11 n.2), the Court "ha[s] diversity jurisdiction, so [it] must follow Oregon law with respect to the interpretation of the insurance policy." *Alexander Mfg., Inc. Emp. Stock Ownership Plan & Tr. v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009) (citing *Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 209 (9th Cir. 1980)).

Court has explained, "[i]f an insurance policy explicitly defines the phrase in question, [the court applies] that definition." *Holloway v. Rep. Indem. Co. of Am.*, 147 P.3d 329, 333 (Or. 2006) (citing *Groshong v. Mut. of Enumclaw Ins. Co.*, 985 P.2d 1284, 1287 (Or. 1999)). But when the insurance policy does not define one of the terms in question, as is the case here, the court "resort[s] to various aids of interpretation to discern the parties' intended meaning." *Id.* (citation omitted).

"The first aid to interpretation is determining whether the term at issue has a *plain* meaning." *Groshong*, 985 P.2d at 1287 (citing *Hoffman*, 836 P.2d at 706). "The meaning of a term is 'plain'—that is, unambiguous—if the term is susceptible to only one plausible interpretation." *Id.* "If the term has only one plausible interpretation, the 'parties' intent conclusively is established, and [the court's] interpretive inquiry is at an end.'" *Peri Formworks*, 223 F. Supp. 3d at 1138 (quoting *Groshong*, 985 P.2d at 1287). Considering "the breadth and flexibility of the English language, the task of suggesting plausible alternative meanings is no challenge to capable counsel." *Id.* (quoting *Hoffman*, 836 P.2d at 706). "Competing plausible interpretations simply establish ambiguity that will require some interpretive act by the court." *Id.* (citation omitted).

If the parties present competing plausible interpretations and thus establish ambiguity, the court must then examine the ambiguous, undefined "term in light of the 'particular context in which that term is used in the policy and the broader context of the policy as a whole.'" *Id.* (quoting *Hoffman*, 836 P.2d at 706). Finally, "[i]f the ambiguity remains after the court has engaged in [the aforementioned] analytical exercises, then any reasonable doubt as to the intended meaning of [the term] will be resolved against the insurance company and in favor of

PAGE 4 – OPINION AND ORDER

extending coverage to the insured." *Id.* (quoting *N. Pac. Ins. Co. v Hamilton*, 22 P.3d 739, 742 (Or. 2001)) (simplified).

## II. DIRECT PHYSICAL LOSS OR DAMAGE

TOC claims that it is entitled to coverage for its COVID-related losses under ten Policy provisions: (1) Property Coverage; (2) Business Income and Extra Expense Coverage; (3) Business Access Coverage; (4) Civil Authority Coverage; (5) Dependent Property Coverage; (6) Expediting Expense Coverage; (7) Extended Business Income and Extra Expense Coverage; (8) Communicable Disease Coverage; (9) Ordinance or Law Coverage; and (10) Loss Adjustment Expense Coverage.[3] (Compl. ¶¶ 10, 117.) As discussed below, with the exception of the Loss Adjustment Expense Coverage provision, all of these provisions depend on whether TOC has plausibly alleged that its claimed losses amounted to "direct physical loss or damage" to property.

### A. Relevant Policy Provisions

#### 1. Property Coverage

The Property Coverage provision provides that FFIC "will pay for direct physical loss or damage to Property Insured . . . caused by or resulting from a covered cause of loss during the Policy Period."[4] (Decl. of Anthony Todaro Ex. A ("Policy") at 42, ECF No. 8-1) . The Policy defines "[p]roperty [i]nsured" to include "business personal property," such as furniture, fixtures,

---

[3] The Court takes judicial notice of the Policy pursuant to the incorporation by reference doctrine. *See Benanav v. Healthy Paws Pet Ins., LLC*, No. 20-421, 2021 WL 4319447, at *4 (W.D. Wash. Sept. 23, 2021) ("[The] policy documents are judicially noticeable under the 'incorporation by reference' doctrine, which allows courts to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005))).

[4] The Court has omitted any bold font when citing to the Policy herein.

PAGE 5 – OPINION AND ORDER

equipment, supplies, electronic data processing equipment, mobile communication equipment, personal effects, tenant's improvements and betterments, and valuable papers and records. (Policy at 42, 87, 95.)

### 2. Business Income and Extra Expense Coverage

The Business Income and Extra Expense Coverage provision provides, in relevant part, that FFIC:

> will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations during the period of restoration arising from direct physical loss or damage to property at a location, or within 1,000 feet of such location, caused by or resulting from a covered cause of loss.

(Policy at 42.) The Policy defines "[l]ocation" in part as the "legal boundaries of a parcel of property at the address described in the Declarations." (Policy at 91.)

### 3. Business Access Coverage

The Business Access Coverage provision provides that FFIC "will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations at a location if access to such location is impaired or obstructed." (Policy at 54.) However, "[s]uch impairment or obstruction must . . . [a]rise from direct physical loss or damage to property other than at such location[.]" (*Id.*)

### 4. Civil Authority Coverage

The Civil Authority Coverage provision provides that FFIC "will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations caused by action of civil authority that prohibits access to a location." (*Id.*) However, "[s]uch prohibition of access to such location by a civil authority must . . . [a]rise from direct physical loss or damage to property other than at such location." (*Id.*)

///

### 5. Dependent Property Coverage

The Dependent Property Coverage provision provides that FFIC "will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations during the period of restoration at a location," but "[t]he suspension must be due to direct physical loss or damage at the location of a dependent property, situated inside or outside of the Coverage Territory, caused by or resulting from a covered cause of loss." (Policy at 54.) The Policy defines "[d]ependent property" as "property operated by others upon which you depend to . . . [d]eliver materials or services to you . . . [or] [a]ccept your products or services[.]" (Policy at 89.)

### 6. Expediting Expense Coverage

The Expediting Expense Coverage provision provides that FFIC "will pay the necessary expediting expense you sustain due to direct physical loss or damage to property at a location caused by or resulting from a covered cause of loss." (Policy at 55.) The Policy defines "[e]xpediting expense" as "necessary extra costs, including overtime wages and express freight or other rapid means of transportation, in order to expedite . . . [e]mergency or temporary repairs of damaged covered property; or . . . [p]ermanent repair or replacement of such damaged property." (Policy at 89.)

### 7. Extended Business Income and Extra Expense Coverage

The Extended Business Income and Extra Expense Coverage provision provides that FFIC:

> will pay for the actual loss of business income you sustain during the period that begins on the date property . . . is actually repaired, rebuilt, or replaced, and operations are resumed and ends on the earlier of:
>
> (a) The date you could restore your operations with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage occurred; or

PAGE 7 – OPINION AND ORDER

(b) The number of consecutive calendar days, stated in the Declarations, after the date operations are resumed.

(Policy at 55.)

### 8.    Communicable Disease Coverage

The Communicable Disease Coverage provision provides that FFIC "will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including [the costs described herein]." (Policy at 57.) The Policy defines a "[c]ommunicable disease event" as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." (Policy at 88.) The Policy defines a "[c]ommunicable disease" as "any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." (*Id.*)

### 9.    Ordinance or Law Coverage

The Ordinance or Law Coverage provision provides that FFIC "will pay" if "Property Insured at a location sustains direct physical loss or damage caused by or resulting from a covered cause of loss; and . . . [s]uch covered loss or damage results in the enforcement of a covered ordinance or law." (Policy at 60.) The Policy defines "[o]rdinance of law" as, among other things, "any ordinance, law, regulation, or rule that is in force at the time of the covered loss or damage and . . . [r]egulates the construction, use, occupancy, operation, improvement, replacement, modification, installation, . . . or repair of any property[.]" (Policy at 94.)

### B.    Analysis

The Court concludes that TOC has not alleged any "direct physical loss or damage" to property, and therefore grants FFIC's motion to dismiss TOC's complaint on this ground.

There is a long line of district court decisions, including decisions by Chief U.S. District Judge Marco Hernández and U.S. District Judge Michael Mosman in this district, holding that "neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage." *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1148 (N.D. Cal. 2021), *appeal filed* No. 21-15585 (9th Cir. Apr. 1, 2021); *see also Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-00597, --- F. Supp. 3d ----, 2021 WL 2184878, at *1 (W.D. Wash. May 28, 2021) ("Like the overwhelming consensus that has formed, this Court determines that COVID-19 does not cause the physical loss or damage to property required as a condition precedent to trigger coverage in all the relevant policies."), *appeal filed* No. 21-35523 (9th Cir. June 30, 2021).[5]

---

[5] The insureds have appealed most of these decisions, including the decisions discussed below from this district. Several circuit courts have already addressed questions similar to the one before the Court. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889-95 (9th Cir. 2021) (applying California law, holding that the insured did not allege "direct physical loss of or damage to" property, and noting that "[i]nterpreting the phrase 'direct physical loss of or damage to' property as requiring physical alteration of property is consistent with other provisions" of the policy, which included provisions that provided coverage "only during the 'period of restoration'" and defined "the 'period of restoration' as ending on '[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location'"); *see also Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, --- F.4th ---, 2021 WL 5833525, at *2-6 (7th Cir. Dec. 9, 2021) (applying Illinois law, noting that the policy included "clues that reinforce the conclusion that 'direct physical loss' requires a physical alteration to property" because "[w]ithout a physical alteration to property, there would be nothing to repair, rebuild, or replace," and stating that "[i]t is thus no surprise that the overwhelming majority of courts, including the four circuits that have so far spoken on the issue, have adopted this interpretation of the relevant provisions"); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401-03 (6th Cir. 2021) (applying Ohio law, explaining that "[e]ven when called 'all-risk' policies, as these policies sometimes are, they still cover only risks that lead to tangible 'physical' loss or damages, say by fire, water, wind, freezing and overheating, or vandalism," as "[i]n each case, the subject property suffers a direct physical change, whether by damage to it that requires repair or the total loss of it that requires replacement," and noting that all-risk "policies do not typically apply to losses caused by government regulation"); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *1-3 (11th Cir. Aug. 31, 2021) (applying Georgia law, noting that the policy provisions applied "only if the events alleged

PAGE 9 – OPINION AND ORDER

In *Dakota Ventures, LLC v. Oregon Mutual Insurance Co.*, --- F. Supp. 3d --- , 2021 WL 3572657, at *1 (D. Or. Aug. 11, 2021), *appeal filed* No. 21-35758 (9th Cir. Sept. 9, 2021), for example, Chief Judge Hernández addressed an insurer's motion to dismiss an insured's complaint, wherein the insured alleged that the insurer breached its insurance contract by denying "coverage for losses stemming from the COVID-19 pandemic," including losses caused by, among other things, "the Governor's [executive] orders[.]" *Id.* Like this case, the insured sought coverage under numerous policy provisions (including property, civil authority, and business income-related coverage provisions) that depended on whether the insured's claimed losses amounted to "direct physical loss or damage" to property, and the policy did not define the phrase "direct physical loss or damage" to property. *Id.* at *1-2.

Applying Oregon law on insurance policy interpretation, Chief Judge Hernández determined that "the plain meaning of the phrase 'direct physical loss of or damage to property' is direct (without any intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to property," and that "[t]he plain meaning of those terms requires a Covered Cause of Loss to directly cause property to be lost or physically damaged for coverage to exist under the [insurance policy] provisions [at

---

here—the COVID-19 pandemic and related shelter-in-place order—caused direct 'accidental physical loss' or 'damage' to the [covered] property," explaining that "there must be 'an actual change in insured property' that either makes the property 'unsatisfactory for future use' or requires 'that repairs be made,'" holding that the insured failed to state a claim, and noting that the court could not "see how the presence of [viral] particles would cause physical damage or loss to the property") (citation omitted); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-45 (8th Cir. 2021) (applying Iowa law, considering whether the pandemic and government orders resulted in "accidental physical loss or accidental physical damage" to business property, interpreting the policy to require direct physical loss or physical damage, and concluding that "there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction").

PAGE 10 – OPINION AND ORDER

issue]."[6] *Id.* at *6 (citing *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-1932-CL, 2016 WL 3267247, at *5 (D. Or. June 7, 2016), *vacated by stipulation*, 2017 WL 1034203 (D. Or. Mar. 6, 2017); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No 98-434-HU, 1999 WL 619100, at *5 (D. Or. Aug. 4, 1999), and *Wyo. Sawmills, Inc. v. Transp. Ins. Co.*, 578 P.2d 1253, 1256 (Or. 1978)).

Consistent with this plain meaning of the phrase "direct physical loss of or damage to property," Chief Judge Hernández held that the insured's operative complaint did "not allege a Covered Cause of Loss that would trigger coverage under any of the relevant provisions of the Policy." *Id.* at *8. In support of this holding, Chief Judge Hernández emphasized that the insured did "not allege that its restaurants or the business personal property located inside them was lost, destroyed, or physically changed in any manner," nor did the insured "allege that any nearby property suffered direct physical loss or damage that physically prevented ingress or egress from [its] restaurants or that resulted in an action of civil authority that prohibited access to its restaurants." *Id.* Chief Judge Hernández also emphasized that the insured's claimed losses were "purely economic" and that there was "no physical loss of or physical damage to [the insured's] property." *Id.* at *9. Furthermore, Chief Judge Hernández explained that the insured's allegations were conclusory and failed to state a plausible claim for relief:

> The relevant allegations in Plaintiff's FAC are: (1) 'the presence of COVID-19 on property damages property [and] makes it unsafe;' and (2) '[d]ue to COVID-19, Plaintiff's property has suffered direct physical loss and damage under the plain meaning of those words [because] COVID-19 has impaired Plaintiff's property by making it unusable.' Plaintiff alleges that COVID-19

---

[6] In *Dakota Ventures*, Chief Judge Hernández noted that "[d]espite the slightly different phrasing, the parties [did] not argue that the phrase 'direct physical loss or damage to property' . . . [had a] different meaning from the phrase 'direct physical loss of or damage to property.'" 2021 WL 3572657, at *6. As a result, Chief Judge Hernández "assume[d], without finding, that the . . . phrases have the same plain meaning for purposes of [the *Dakota Ventures*] opinion." *Id.* Similarly here, the parties do not argue that these phrases have different meanings.

> located on property damages property, but, crucially, it does not allege that
> COVID-19 was located on *its* property and damaged *its* property or any other
> property. Absent from those allegations are any facts from which a factfinder
> could conclude that any of Plaintiff's property was lost or damaged. Plaintiff's
> conclusory allegations that it has suffered direct physical loss and damage are
> insufficient to state a claim. The absence of facts demonstrating any physical loss
> or damage to its business property is fatal to Plaintiff's claim.
>
> Amici argue that Plaintiff has alleged a plausible claim for 'direct physical
> loss of or damage to property' by alleging that COVID-19 is present in the
> community in numbers that make it 'statistically certain that the virus was and is
> present in high-trafficked restaurants.' But that solves only one part of the two-
> part equation. Even assuming that the virus was present in Plaintiff's restaurants,
> Plaintiffs' property has not been lost or damaged by the virus in a manner that
> required it to suspend operations in order to conduct repairs or replace the
> property. No such allegations appear in Plaintiff's FAC.

*Id.* at *8 (simplified). Chief Judge Hernández noted that numerous decisions were in accord. *See id.*[7]

Similarly, in *RV Agate Beach, LLC v. Hartford Fire Insurance Co.*, No. 3:21-cv-00460-MO, 2021 WL 4851304, at *1 (D. Or. Oct. 16, 2021), *appeal filed* No. 21-35946 (9th Cir. Nov. 10, 2021), Judge Mosman addressed an insurer's motion to dismiss a complaint, wherein the insureds alleged that they sustained "direct physical loss and damage" as a result of the COVID-19 pandemic and "various governmental orders[.]" *Id.* In granting the insurer's motion to dismiss, Judge Mosman explained that the insureds had "not pled 'direct physical loss or direct physical damage' to their property because their pleadings only demonstrate[d] economic and

---

[7] Chief Judge Hernández recently dismissed with prejudice four similar cases seeking to recover losses related to the COVID-19 pandemic. *See NUE, LLC v. Or. Mut. Ins. Co.*, No. 3:20-cv-01449-HZ, --- F.Supp.3d ----, 2021 WL 4071862, at *1 (D. Or. Sept. 4, 2021), *appeal filed* No. 21-35813 (9th Cir. Sept. 28, 2021); *Nari Suda LLC v. Or. Mut. Ins. Co.*, No. 3:20-cv-01476-HZ, --- F.Supp.3d ----, 2021 WL 4067684, at *1 (D. Or. Sept. 6, 2021), *appeal filed* No. 21-35846 (9th Cir. Oct. 7, 2021); *HILLBRO LLC v. Or. Mut. Ins. Co.*, No. 3:21-cv-00382-HZ, --- F.Supp.3d ----, 2021 WL 4071864, at *1 (D. Or. Sept. 7, 2021), *appeal filed* No. 21-35810 (9th Cir. Sept. 28, 2021); *N. Pac. Mgmt., Inc. v. Liberty Mut. Fire Ins. Co.*, No. 3:21-cv-00404-HZ, --- F.Supp.3d ----, 2021 WL 4073278, at *1 (D. Or. Sept. 7, 2021), *appeal filed* No. 21-35842 (9th Cir. Oct. 6, 2021).

not physical harm." *Id.* Judge Mosman noted that Chief Judge Hernández recently issued five decisions, including *Dakota Ventures*, analyzing "the meaning of the phrase 'direct physical loss or damage' under Oregon law," and "finding no coverage for COVID-19 business interruption claims under Oregon law." *Id.* (citations omitted). Judge Mosman also noted that in *Dakota Ventures*, Chief Judge Hernández "applied the framework for interpreting insurance contracts under Oregon law," and determined that:

> the plain meaning of the phrase 'direct physical loss of or damage to property' is direct (without intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to property. The plain meaning of those terms requires a Covered Cause of Loss to directly cause property to be lost or physically damaged for coverage to exist[.]

*Id.* (simplified). Judge Mosman found Chief Judge Hernández's "reasoning and legal analysis" persuasive and, therefore, "adopt[ed]" it in dismissing the insureds' complaint with prejudice. *Id.* at *2.

Like Judge Mosman, this Court finds persuasive Chief Judge Hernández's reasoning and legal analysis in *Dakota Ventures*, and thus adopts it in granting FFIC's motion to dismiss TOC's complaint on the ground that TOC has not alleged "direct physical loss or damage" to property. As explained below, TOC's attempts to distinguish *Dakota Ventures* are not persuasive.

TOC argues that the present action is distinguishable from *Dakota Ventures* because, unlike the policyholder in *Dakota Ventures*, TOC alleges that COVID-19 was on its property. (Pl.'s Sur-Reply at 2.) In so arguing, TOC relies on these allegations from its complaint:

- "The Covid-19 virus can remain infectious for 'much longer time periods than generally considered possible.' In the Journal of Virology, researchers demonstrated that the Covid-19 virus can survive up to 28 days at room temperature (68°F) on a variety of surfaces including glass, steel, vinyl, plastic, and paper. A CDC report from March 27, 2020, stated that the Covid-19 virus was identified on surfaces of the cabins on the Diamond Princess cruise ship 17 days after the cabins were vacated but before they were disinfected. Numerous other scientific studies and articles have identified the persistence of the Covid-19 virus on

PAGE 13 – OPINION AND ORDER

- "doorknobs, toilets, faucets and other high-touch points, as well as on commonly overlooked surfaces such as floors."

- "Every county where The Oregon Clinic maintains an office has reported positive tests for infection by the Covid-19 virus."

- "The presence of the Covid-19 virus at The Oregon Clinic's offices, as well as its dependent locations, was statistically certain or near-certain, using statistical modeling based on the known incidences of infection and other information generally used in epidemiology, despite the lack of commercially available tests for fomite or the aerosolized Covid-19 virus, and despite the shortage of tests that could have otherwise been administered to every individual who was on-site at the relevant times."

- "The omnipresence of the Covid-19 virus is enabled by multiple modes of viral transmission, including respiratory droplets, airborne and fomite transmission (*i.e.*, transmission from surfaces and objects). These transmission methods demonstrate that the Covid-19 virus causes direct physical loss or damage to property."

- "[T]he presence of the Covid-19 virus in and on property, including in indoor air, on surfaces, and on objects, causes direct physical loss or damage to property by causing physical harm to and altering property and otherwise making physical property incapable of being used for its intended purpose."

- "Through November, 2020, approximately twenty-two of The Oregon Clinic's employees or patients that have been on The Oregon Clinic's insured property since the beginning of the pandemic have confirmed that they were infected with the Covid-19 virus while they were on insured premises. Given the high percentage of persons infected by the Covid-19 virus who are asymptomatic, it is certain or near-certain that the actual number of The Oregon Clinic employees or patients infected with the Covid-19 virus that have been in or on The Oregon Clinic's [insured] property since the beginning of the pandemic is substantially greater than the number of employees and patients known to have been infected with the Covid-19 virus."

- "The continuous dispersal of the Covid-19 virus into the air and onto physical surfaces and other property rendered The Oregon Clinic's cleaning practices ineffective at removing the virus from surfaces and from the air inside The Oregon Clinic's offices, requiring physical and other changes to The Oregon Clinic's insured property, and practices."

- "[Oregon Governor Kate Brown's] Public Orders caused the physical loss of or to The Oregon Clinic's insured property and dependent properties in

PAGE 14 – OPINION AND ORDER

> that they made portions of those properties (including the portions of offices or other facilities used for elective or non-urgent procedures; and those physical spaces that could not accommodate social distancing or were otherwise unsuitable due to requirements of the Public Orders) unusable, untenable, inaccessible, and devoid of functionality; and limited the use of all or portions of the insured properties and dependent properties by requiring social distancing and other measures; and required the physical alteration of insured properties and dependent properties to comply with various requirements of the Public Orders."

(*See* Pl.'s Sur-Reply at 2-3, citing and quoting Compl. ¶¶ 36, 39-40, 47, 58, 78, 83, 88).

TOC argues this case is distinguishable from *Dakota Ventures* because the allegations above demonstrate that COVID-19 virus was on TOC's property. In *Dakota Ventures*, however, Chief Judge Hernández explained that "[e]ven assuming that the virus was present in Plaintiff's restaurants, Plaintiff's property has not been lost or damaged by the virus in a manner that required it to suspend operations in order to conduct repairs or replace the property." 2021 WL 3572657, at *8.

Similarly here, TOC does not allege that its property has been lost or damaged by COVID-19 in a manner that required TOC to suspend operations to conduct repairs or replace any insured property. Rather, TOC's claimed losses are purely economic and not the result of any "direct physical loss or damage" to covered property. *See id*. at *9 ("[T]he losses alleged by Plaintiff are purely economic . . . . Plaintiff's pleadings attempt to characterize the harmful effects of government closure orders issued in response to the public health crisis as 'physical loss' or 'physical damage,' but no physical loss of or physical damage to its property occurred. As a result, no coverage exists under the . . . provisions of the Policy."); *see also id*. ("[T]he FAC alleges only that government orders restricted the manner in which its restaurants may serve customers, while leaving the property itself in Plaintiff's possession, unharmed, and undamaged. As a result, Plaintiff has failed to allege a direct physical loss of or damage to its covered

PAGE 15 – OPINION AND ORDER

property."); *id.* at *10 ("Plaintiff's FAC alleges that it has been able to serve takeout or delivery orders and at times has been able to serve a limited number of customers in its restaurants' dining rooms. Thus, the cases in which courts have found that noxious odors, mold, gas, and other air quality issues rendered a property uninhabitable to an extent that amounted to 'physical loss or damage' are distinguishable from the facts of this case.") (simplified).

TOC also argues that the Court should not rely on Chief Judge Hernández's decision in *Dakota Ventures* because it relies on interpretations of policy terms that Oregon state courts have rejected. (Pl.'s Sur-Reply at 3.) TOC's argument primarily concerns Chief Judge Hernández's determination that the plain meaning of the term "direct physical loss of or damage to property" requires "a Covered Cause of Loss to directly cause property to be *lost* or physically damaged," and requires an insured to "*lose . . . possession* of its property or demonstrate a physical *alteration* in the condition of its property[.]" 2021 WL 3572657, at *6-7 (emphasis added).

TOC argues that because the emphasized words above do not appear in the policy, *Dakota Ventures* "ignore[s]" the mandate under Oregon law that "policies be given 'a liberal construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed in support of a view that will protect the insured and defeat a forfeiture.'" (Pl.'s Sur-Reply at 3-4, quoting *Land v. W. Coast Life. Ins. Co.*, 270 P.2d 154, 156 (Or. 1954)). TOC, however, fails adequately to explain how *Dakota Ventures* runs afoul of this mandate, or convince why its proposed intendment is reasonable here.

Further, TOC argues that *Dakota Ventures* "committed a clear *Erie* error in relying on [the] *Couch* [treatise] and adopting the 'physical alteration' standard." (Pl.'s Sur-Reply at 5.) TOC acknowledges that another judge from this district also adopted a "physical alteration" standard under similar circumstances. (Pl.'s Sur-Reply at 4, citing *Great N. Ins. Co. v. Benjamin*

PAGE 16 – OPINION AND ORDER

*Franklin Fed. Savings & Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (unpublished table decision)). TOC, however, maintains that the Oregon Court of Appeals "implicitly" rejected the *Benjamin Franklin* decision in *Farmers Insurance Co. v. Trutanich*, 858 P.2d 1332 (Or. Ct. App. 1993). (Pl.'s Sur-Reply at 4.) The Court is not persuaded.

TOC fails adequately to address the fact that both *Benjamin Franklin* and *Dakota Ventures* relied on the Oregon Supreme Court's decision in *Wyoming Sawmills*, a case that the Oregon Court of Appeals distinguished and found "not directly applicable" in *Trutanich*. *See Trutanich*, 858 P.2d at 1335 ("This case is different. There is evidence that the house was physically damaged by the odor that persisted in it. The cost of removing that odor was a direct rectification of the problem. *Wyoming Sawmills* thus is not directly applicable here."); *see also Benjamin Franklin*, 793 F. Supp. at 263 ("The liability policy in *Wyoming Sawmills* used the term 'physical injury' . . . . At issue was whether this language was intended to include 'consequential or intangible damages such as depreciation in value, within the terms property damage.' The court answered 'no.' It reasoned that use of the word 'physical' could only have been intended to exclude such coverage. . . . In this case, the policy language is even more specific than the language in *Wyoming Sawmills*. It uses the term 'direct physical loss.' There is no evidence here of physical loss, direct or otherwise. The building has remained physically intact and undamaged. The only loss is economic. The policy, by its own terms, covers only direct physical loss. The inclusion of the terms 'direct' and 'physical' could only have been intended to exclude indirect, nonphysical losses."); *Dakota Ventures*, 2021 WL 3572657, at *6 ("Including the word physical in the phrase 'physical injury to tangible property' negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as

depreciation in value, within the term 'property damage.'") (simplified). As a result, the Court does not agree that Chief Judge Hernández violated the *Erie* doctrine in *Dakota Ventures*.

Also noteworthy is that TOC acknowledges that *Dakota Ventures* distinguished cases "involving airborne particles, like *Trutanich*[.]" (Pl.'s Sur-Reply at 5.) *Dakota Ventures* did so based, in part, on the fact that "the presence of the substance [i.e., noxious odor, mold, smoke, or gas] rendered the property completely uninhabitable, not just dangerous to occupy in significant numbers." 2021 WL 3572657, at *10 (citations omitted). TOC argues that "none of those cases relied on the property being 'completely' unusable[.]" (Pl.'s Sur-Reply at 6.) In distinguishing *Wyoming Sawmills*, however, *Trutanich* did rely on the fact that (1) "the house was physically damaged by the odor that persisted in it," and (2) "[t]he cost of removing that odor was a direct rectification of the problem." 858 P.2d at 1335. Unlike *Trutanich*, TOC's allegations do not suggest that any covered property was "physically damaged" by a virus that persisted in it, or that the costs of removing the virus would have directly rectified the problem. Accordingly, the Court follows *Dakota Ventures* and *Benjamin Franklin*, both of which relied in part on *Wyoming Sawmills*.

In sum, the Court concludes that TOC has not alleged "direct physical loss or damage" to property. The Court therefore grants FFIC's motion to dismiss TOC's complaint on this ground.

### III.    LOSS ADJUSTMENT EXPENSE COVERAGE

#### A.    Relevant Policy Provision

The Loss Adjustment Expense Coverage provision provides that FFIC "will pay the necessary loss adjustment expenses you incur that would not have been incurred had there not been a covered loss." (Policy at 59.) This provision provides that loss adjustment expenses include, but are not limited to, "[e]xpenses incurred to document your business income loss or

PAGE 18 – OPINION AND ORDER

extra expense sustained," public or certified public accountant fees, appraisal costs, and "[o]ther expenses incurred to obtain loss data in support of your claim[.]" (*Id.*)

### B.   Analysis

The parties agrees that Loss Adjustment Expense Coverage applies only if a covered loss occurred. (*See* Mot. at 37, stating that "the Loss Adjustment extension is only applicable if coverage is established"; Pl.'s Corrected Resp. at 33, arguing that "there is no question that 'a covered loss' occurred as alleged by TOC"). For the reasons discussed above, TOC has not alleged a covered loss. Accordingly, the Court grants FFIC's motion to dismiss on the ground that TOC has failed to state a claim for Loss Adjustment Expense Coverage.[8]

## IV.   DISMISSAL WITH PREJUDICE

The Court dismisses this action with prejudice because TOC cannot allege a plausible claim under the Policy. *See Dakota Ventures*, 2021 WL 3572657, at *13 ("Because the Court finds that Plaintiff's FAC cannot be amended to plausibly allege a claim under the terms of the Policy, the Court denies leave to amend."); *RV Agate*, 2021 WL 4851304, at *2 ("Because the Court finds that Plaintiffs' complaint cannot be amended to plausibly allege a claim under the terms of the policy, the Court denies leave to amend.").

///

///

///

///

---

[8] The Court does not address whether the mortality and disease exclusion, which other courts have referred to as a "virus exclusion," applies here because TOC fails to allege, and cannot allege, that its losses fall within the Policy's grant of coverage. *See, e.g.*, *RV Agate Beach*, 2021 WL 4851304, at *2 ("[B]ecause Plaintiffs fail to demonstrate that their loss falls within the policy's grant of coverage, the Court does not have to find whether the virus exclusion applies.") (citation omitted).

## CONCLUSION

Based on the foregoing reasons, the Court GRANTS FFIC's motion to dismiss (ECF No. 7), and dismisses this case with prejudice.

**IT IS SO ORDERED.**

DATED this 15th day of December, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge